**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | |
| CARIBBEAN PETROLEUM, LP., et al., | **CIVIL NO.** 04-1964 (FAB) |
| **Debtors** | |

**OPINION AND ORDER
FOLLOWING SECOND BENCH TRIAL**

BESOSA, District Judge

## I.    INTRODUCTION

Plaintiffs are the second group of residents of Cabrera Development in Utuado who filed a damages action against the debtor because of a gasoline spill.  A bench trial was held to determine damages for the first group of 16 representatives of residents who are or were asthmatic or suffered from other respiratory illnesses. (Docket Nos. 87-90; 101-104) The Court issued an Opinion and Order following [the first] Bench Trial, awarding damages to those 16 plaintiffs.  (Docket No. 131)  In re Caribbean Petroleum, LP, 561 F.Supp.2d 194 (D.P.R. 2008) (Caribbean Petroleum I).

Further introductory statements, an analysis of the law of damages in Puerto Rico and the factual and legal findings of the liability trial held before the Superior Court of Puerto Rico, Utuado Division, are contained in Caribbean Petroleum I (Docket No. 131, pp. 1-9), 561 F.Supp.2d at 198-202, and need not be repeated here.  As it did following the first bench trial, the

Court has considered the findings made by the Utuado Court and the testimonial and documentary evidence presented at the second bench trial to arrive at its findings of fact.

Thirteen plaintiffs testified during the second bench trial, held on October 15, 17 and 20, 2008.  They are:

1.   Ivan Robles-Irizarry (Oct. 15 Tr., pp. 7-34)

2.   Alicia Rivera-Martinez (Oct. 15 Tr., pp. 34-54)

3.   William Morales-Martinez (Oct. 15 Tr., pp. 54-69)

4.   Daisy Rodriguez-Acevedo (Oct. 17 Tr., pp. 6-22)

5.   Iris Natal-Andujar (Oct. 17 Tr., pp. 22-37)

6.   Alberto Albaran-Natal (Oct. 17 Tr., pp. 37-49)

7.   Mariano Jose Albaran-Natal (Oct. 17 Tr., pp. 49-63)

8.   Andres Gonzalez-Baez (Oct. 17 Tr., pp. 63-73)

9.   Maribel Rodriguez-Maldonado (Oct. 17 Tr., pp. 73-89)

10.  Ginette Marie Matos-Molina (Oct. 17 Tr., pp. 89-111)

11.  Rafael Moran-Gonzalez (Oct. 20 Tr., pp. 6-15)

12.  Moraima Moran-Velez (Oct. 20 Tr., pp. 15-19)

13.  Carmelo Gonzalez-de Jesus (Oct. 20 Tr., pp. 19-39)

Plaintiffs did not present an expert during the second bench trial.  Defendant presented the testimony of Dr. Arturo Cedeño, who had also testified during the first bench trial.  (Oct. 20 Tr., pp. 39-77)

Civil No. 04-1964 (FAB)                                                3

## II.  EVIDENCE PRESENTED

### 1.  Ivan Robles Irizarry

Ivan Robles-Irizarry is 44 years old and is married to Alicia Marrero-Gonzalez; they have two sons, Ivan Robles-Marrero and Alexis Robles-Marrero.  From 1979 to 1998 he lived at B-38 in Cabrera Development with his family.  In late 1993, he began to perceive a stench of gasoline in the neighborhood, and attempted with his family and neighbors to find the odor's source.  He testified that he began to feel tired and started to feel irritation in his eyes, skin and throat, nasal congestion and weak headaches.  He further stated that the smell affected his daily activities, especially practicing his guitar and giving guitar lessons, because he used to do that in his house's balcony or carport.

Because the gasoline fumes affected his family, he became anxious and preoccupied about their health.  His wife complained of nasal and throat problems and difficulty breathing.  His children complained of headaches, nausea, irritation of the nose and skin, and of becoming tired.

The smell of gasoline was felt with more intensity during cold, rainy days, in the mornings and at dusk, especially during 1993, 1994 and 1995.  To escape the smell, the family would go to town plaza, to his parents' house at the Vivi Arriba Ward in Utuado, and to Guayanilla, where his in-laws lived, on weekends.

Civil No. 04-1964 (FAB)                                                    4

They considered moving from Cabrera, but their economic situation did not allow it, and furthermore, because their children did not want to move from where they were spending their childhood.

Mr. Robles testified that the family took home remedies and over-the-counter medication such as Tylenol, Panadol and Visine in an effort to minimize the symptoms they were feeling. He also testified that in January 1994 he visited Dr. Brocco, who prescribed medication (Librax) for his anxiety and irritations. In the chart he filled out, however, he did not indicate that he visited any physician or emergency ward because of the symptoms he felt because of the gasoline smell. Neither did he indicate in the chart that he suffered headaches because of the smell.

Dr. Cedeño, defendant's expert witness, repeated his testimony at the first bench trial that gasoline is a respiratory tract irritant, but that Mr. Robles' complaints may be caused by illnesses such as the common cold and upper respiratory infections.

Based on the chart he prepared, the Court finds that Mr. Robles either did not visit Dr. Brocco or, if he did, it was for reasons not related to the gasoline fumes. Nevertheless, Court finds that Mr. Robles has proven by a preponderance of the evidence that the damages he suffered were caused by the gasoline fumes. Accordingly, he is entitled to damages in the amount of $30,000.

   **2.   Alicia Rivera-Martinez**

        Alicia Rivera-Martinez is married to Lizando Martinez-
Rivera.  They had three sons who were 16,[1] 12 and 8 years old at
the time of the gasoline spill.  They have lived at B-39 in Cabrera
Development for 29 years.

        As most, if not all of the plaintiffs who have testified
in both bench trials, she began to perceive gasoline odors in late
1993.  With neighbors, she tried to find the source of the smell.
They discarded the police headquarters construction site after
speaking with the engineer-in-charge.  When they discovered that
the odor came from the Rio Grande de Arecibo, they reported their
findings to the Environmental Quality Board and the Civil Defense.
The odors continued through 1995, especially during the afternoon
and evening hours and during and after rains.  By 1996 and 1997 the
intensity of the smell had decreased.

        Mrs. Rivera testified that she felt nausea, pressure on
her chest, she felt she could not breathe properly, had strong
headaches and irritated eyes.  She became anguished because her
children were affected by the fumes, also; her second son, Ricardo,
developed asthma.

        She also testified that she visited the Emergency Ward of
the Municipal Hospital twice.  Both times she complained of asthma-
like symptoms and was given respiratory therapy.  She also took her

_____

        [1] The oldest son, Jose Martinez-Rivera, is deceased.

children to specialists.  Because she could treat herself with the medication prescribed to her children, she felt she did not have to have follow-up visits herself for her conditions.  No records of any of these visits were presented.

Though no medical records were presented to support her testimony, the Court finds that Mrs. Rivera has proven by a preponderance of the evidence that the damages she suffered were caused by the gasoline fumes.  Accordingly, she is entitled to $30,000 in damages.

### 3.  William Morales-Martinez

William Morales-Martinez is married to Carmen Rodriguez-Maldonado; they have two sons, William and Michael, who were 11 and 9 years old at the time the gasoline odors were felt.  They lived at B-15, Cabrera Development.  Like the other plaintiffs, he began to smell the gasoline odors in 1993.  He felt irritation of his eyes and throat, intense headaches, itching on his body, and dizzy spells when the odor was stronger.  His family was also affected by the fumes; his wife would cough repeatedly and vomit, and his children's eyes became irritated and they developed asthma and looked tired.  Mr. Morales was affected by his family's suffering as well as his own.

He testified that he took his children to Dr. Paz, a pediatrician, who prescribed medication to them, but did not present any of those medical records.  He did not visit physicians

for his own conditions, (though he had medical insurance) but took the medication prescribed to his children and over the counter analgesics.

In 2003, he had requested to be certified as disabled due to carpal tunnel, pain, anxiety and sleeplessness.

Though he did not produce any medical records to show that he visited health facilities, the Court finds that Mr. Morales has proven by a preponderance of the evidence that he suffered damages caused by the gasoline fumes. Accordingly, he is entitled to $30,000 in damages.

### 4.   Daisy Rodriguez-Acevedo

Mrs. Daisy Rodriguez-Acevedo lived at B-14 Cabrera Development from 1988 to 1997 with her then husband, Reynaldo Alvarez, and their two children, Reynaldo and Taizhly. In December 1993, she began to notice a strong gasoline odor – like if she had been dropped into a Ziploc bag full of gasoline. She thought the odors came from the construction of the police headquarters behind her house, but the workers there assured her that no work with gasoline or gasoline-powered machinery was being used at the site. Until she found out that the odor came from a gasoline spill in the Rio Grande, she thought that someone was working on a motorcycle or similar thing within the neighborhood.

She testified that she suffered severe headaches, watery and irritable eyes, blurred vision, throat aches, trouble breathing

through her nose, unending tiredness and overall discomfort.  She
testified that she would go to the hospital practically every week
during 1994 because every day after 5:00, the odor became stronger
and she would suffer headaches, nausea, and such general discomfort
that she could not eat.  Her children had asthmatic episodes that
they hadn't had previously; her son Reynaldo even became cyanotic
after one such episode on February 14, 2004.  She had to purchase
a respiratory therapy machine for Reynaldo (using $50.00 given to
her by the Civil Defense as part of the payment) to be able to give
him the respiratory therapy that the doctor had prescribed.  Her
children were seen by three physicians, Dr. Caparros, a General
Practitioner, Dr. Oquendo, an internist, and Dr. Paz, a
Pediatrician.   Mrs. Rodriguez herself visited a naturopath,
Dr. Nelson Monge, who prescribed a homemade concoction.  She was
affected by her children's suffering – she felt that her children
were not enjoying the childhood that children are expected to
enjoy.  In 1997, with the birth of her third child, she moved out
of Cabrera.

        No medical records were submitted to substantiate
Mrs. Rodriguez's claims.  The Court nevertheless finds that
Mrs. Rodriguez's testimony was credible and that she proved by a
preponderance of the evidence that her damages were caused by the
gasoline fumes.  Accordingly, she is entitled to damages in the
amount of $30,000.

### 5.   Iris N. Natal-Andujar

Iris N. Natal-Andujar is married to Adalberto Albaran-Gonzalez; they have three children, Melba del Carmen, Adalberto and Mariano Jose.  They have lived at D-7 Cabrera Development since 1975.

Like the other plaintiffs, Mrs. Natal began to smell a strong gasoline stench in late 1993 – as if a gasoline container was close by.  She checked around with her neighbors to see if gasoline was spilling from automobiles or lawnmowers, but later found out that the odor was coming from the Rio Grande.

The odors were felt everyday from 1993 to 1996 especially strong in the mornings when it was cold and damp, and in the evenings.  At night, the odor was no strong that sleep was difficult.  In 1997, the odor was not as strong, but she remained fearful for her own safety and that of her family.

Because of the gasoline smell, she began having headaches, feeling itching on her body, painful irritation and swelling of her nose and mouth.  She also mentioned ear infections, but as Dr. Cedeño testified, these are not caused by an irritant such as gasoline.  She required medical assistance and prescription medication for her symptoms, and visited the emergency room on several occasions for treatment.

Her husband was hospitalized because of eruptions on his skin and her two sons[2] suffered itching on their bodies and painful irritation of their eyes and throat.  Both had to quit doing their weightlifting training at home.  She was affected by her family's suffering to the extent that she barely rested thinking that her sons might asphyxiate due to the odor.  She even had her gas cooking stove replaced for fear that it would ignite when lit with a match.

Although Mrs. Natal testified that she had to go to the emergency room on several occasions because of her symptoms, no medical care was noted on the chart she prepared for this litigation.

The court finds that Mrs. Natal did not visit any medical facility due to the fumes' effect on her.  Had she visited a medical facility, she would have indicated it on her chart. Nonetheless, the Court finds that she was affected both by the gas fumes and by her family's suffering.  The Court therefore finds that Mrs. Natal has proven by a preponderance of the evidence that she is entitled to damages in the amount of $30,000.

**6.   Adalberto Albaran-Natal**

Adalberto Albaran-Natal is the older son of plaintiff Iris Natal.  During the years that the gasoline odor was present at

---

[2] Her daughter did not live at Cabrera during the time the gasoline odor was felt.

Cabrera Development, he was a student at the University of Puerto Rico, Mayagüez Campus, where he was concentrating in physical education.  He would come home to D-7 Cabrera on weekends, and felt the gasoline odor then.  He suffered from allergies since childhood and the allergy episodes would become severe when he was at home. His nose would become congested, his eyes irritated, and he developed strong headaches.  He testified that he visited the emergency room a couple of times, especially in the evenings when the smell would become stronger and he developed severe headaches. He would use over-the-counter medications such as Comtrex, Tylenol and Panadol, and home-made remedies to relieve his symptoms.  The medical records presented by him demonstrate that in 1995 he was treated for a cough and cold, but no mention is made of exposure to gasoline or gasoline fumes.  In October, 1995, his visit to the emergency room was for treatment of lower back pain and his May, 1996 visit was for gastroenteritis.  None of these visits had anything to do with exposure to gasoline fumes.

He was a weightlifter, but his symptoms did not permit him to train at home – they would not allow him to breathe properly.  He was part of the Puerto Rico weightlifting group and weekend training was a necessity to maintain himself in a proper state of training to remain at the level of the weight lifting group.  He did not consider training in Arecibo, however, because

it was "too far."  When he returned to Mayagüez after the weekend, the symptoms would disappear.

Adalberto was also affected by seeing his parents and brother affected by the fumes and not being able to do anything about it.  He was worried because his mother seemed to be in panic. She made him check any containers in the yard to make sure they didn't contain gasoline.  No artifact that could generate a spark could be used for fear of starting a fire.  His mother even changed the soap the family used, thinking it was causing the allergies.

Although Adalberto testified that he visited the emergency ward a couple of times, he did not mention any visit to a health facility in the chart be prepared for this litigation. Additionally, if it was important for him to train to maintain his competitiveness at the level necessary to remain a member of the Puerto Rico Weightlifting group, he would have made an effort to train in Arecibo.  Nevertheless, the Court finds that Adalberto Albaran-Natal has proven by a preponderance of the evidence that he suffered $10,000 in damages caused by the gasoline fumes.

**7.   Mariano Jose Albaran-Natal**

Mariano Jose is the younger son of plaintiff Iris Natal and brother of plaintiff Alberto Albaran-Natal.  He lived at D-7 Cabrera and was in his last year of high school in Utuado when he first smelled the gasoline odor in late 1993.  In the Fall of 1994, he began his university studies at the University of Puerto Rico,

Utuado Campus, living at home with his parents.  Because of the
gasoline smell he had difficulty studying at home and training as
a weightlifter and as a track and field athlete.  His progress as
an athlete did not keep up with his peers' progress.  The stench
was asphyxiating.  His eyes and skin would become irritated, he
would develop headaches and he had difficulty sleeping at all until
he transferred from the Utuado Campus.

In 1996 he transferred to the University of Puerto Rico,
Mayagüez Campus, after which he was affected by the gasoline odor
only when he came home.

He testified that he visited the emergency room several
times to be treated for strong headaches, throat and skin
irritations, itching and pain, but in the chart he prepared for
this litigation, he did not mention having received medical
attention or having visited the emergency room because he was
affected by the gasoline fumes.  Nonetheless, because Mariano Jose
remained at home at Cabrera during the years the gasoline smell was
felt strongly, the Court finds that Mariano Jose has proven by a
preponderance of the evidence that he suffered $20,000 in damages
because of the gasoline fumes.

8.  **Andres Gonzalez-Baez**

Andres Gonzalez-Baez is married to Gladys Denisa Marin.
They have three sons, Andres Miguel and twins Jorge Andres and
Andres Enrico.  Until 1997 he lived with his family at B-30 Cabrera

Development, which is 200 to 250 feet from the Rio Grande de Arecibo.

In late 1993 he began to perceive gasoline odors. Through a radio program he learned that the smell came from the river. His air passages, skin and eyes became irritated, his skin itched and he felt tense and anxious. He developed headaches. He used eye drops, analgesics (Panadol) and a mixture of honey and lemon to soothe his symptoms.

Mr. Gonzalez-Baez is an electronic equipment repairman, and installed alarm systems in automobiles. His shop was in Cabrera. Because of the effect the stench caused him, he was not only unable to concentrate on his work, which resulted in him taking more time to complete an assigned task, but also he was unable to relax at home after a days' work. He sometimes went to his in-laws' house to escape the odors.

His children became ill also and he had to take them to physicians who prescribed the use of respiratory aid machines. They cried a lot, especially the twins, who became hyperactive, had trouble sleeping, and had to have respiratory therapy. Gonzalez-Baez felt depressed because of the effects the odors had on his COPD, his wife and his children.

Although Mr. Gonzalez-Baez did not produce any medical record pertaining to him or to his family that would show treatment for exposure to gasoline fumes, the Court finds that he has proven

by a preponderance of the evidence that Mr. Gonzalez-Baez suffered $30,000 in damages because of the gasoline fumes.

### 9.   Maribel Rodriguez-Maldonado

Maribel Rodriguez-Maldonado is married to Jose Manuel Perez-Tort.  They lived at D-33 Cabrera Development from 1992 to 1995 with their three children, Jose Manuel, Nicole Marie and Coral Marie.  She worked at the University of Puerto Rico, Utuado Campus.

Like the other plaintiffs, she began to perceive strong gasoline odors in 1993.  The odors became stronger and more acute later on.  They caused her to develop headaches, irritation of the eyes, difficulty in breathing, nauseous discomfort and itching over her body.  Her children, Jose Manuel, who was 5 years old, and Nicole Marie, who was 4 years old, also developed headaches, irritation of the eyes, nose and throat, and general discomfort. Jose Manuel also was nauseous and seemed to lack energy; Nicole Marie also vomited.  The baby, Coral Marie, who was three months old, presented serious respiratory problems, a dry cough and irritation of the eyes and throat, but had been under treatment for the dry cough since February 1993, before the gasoline spill and had been diagnosed with croup in September 1993, also before the gasoline spill.[3]

Mrs. Rodriguez testified that she felt anguished and depressed because her children's health continued to deteriorate.

---

[3] Coral Marie's damages case is not before the Court.

Because of the situation in Cabrera and how it affected them, the family moved from Cabrera in 1995 to a house far from the gasoline odors.  Nevertheless, Mrs. Rodriguez testified that her children's conditions did not improve.  Jose Manuel and Nicole continued to have headaches; Coral Marie presented her first respiratory problem at age 2.

No medical records were presented to support Mrs. Rodriguez's testimony.  Nevertheless, the Court finds that she has proven, by a preponderance of the evidence, that she suffered $30,000 in damages due to the odors caused by the gasoline spill.

**10.  Ginette Marie Matos-Molina**

Ginette Marie Matos-Molina has been married to Carmelo Gonzalez-de Jesus since 1991.  In October 1993 they rented the house at B-28 Cabrera Development.  At the time, their son Kevin was one year old.  In June, 1994 a second son, Christian, was born.

She began to smell the gasoline fumes in December 1993 and suffered eye, nose and throat irritation, congestion and severe headaches through 1995, and during rainy days in 1996.  During her pregnancy, she could not take any medication for her symptoms. After her pregnancy she treated herself with house remedies and Panadol.

Kevin suffered from nasal congestion and eye irritation and complained a lot, but had been under medical treatment for respiratory problems since well before the gasoline spill.  He had

various visits to the doctor both in 1995 and 1996, and was treated by his pediatrician because of bronchial asthma, croup and recurrent laryngotracheitis. His medical records show visits to his pediatrician due to abdominal problems, vomit, loose stools, nausea, upper respiratory and skin infections. There is no notation in Kevin's medical record about exposure to gasoline fumes. Christian began to become ill, coughing, crying and with asthmatic symptoms by the time he was three months old. He would wake up every couple of hours. He had to be taken to the doctor and the emergency room several times and even had to be hospitalized due to nasal congestion and asthma. He was also treated by his pediatrician for bronchial spasms, otitis media, and upper tract respiratory infection. The treatment Christian received, however, after the gasoline spill, did not change in frequency when compared with the treatment he received before the spill.

Mrs. Matos' husband also was affected by the gasoline odor. He suffered from eye irritation, pain in the throat, congestion and headaches.

Mrs. Matos felt anguished because of the condition of her children and husband.

The Court finds that Mrs. Matos has proven by a preponderance of the evidence that she suffered damages as a result

of the fumes produced by the gasoline spill. Accordingly, Mrs. Matos is entitled to $30,000 in damages.

### 11.  Rafael Moran-Gonzalez

Rafael Moran-Gonzalez is married to Josefina Velez-Santiago. They have three children. The family lived at B-12 Cabrera Development, 125 feet from the Rotary Club, which is near the site where the gasoline seeped into the Rio Grande.

He began to smell the gasoline odor in November or December 1993. In January 1994, the Environmental Quality Board informed him that the odor was caused by a gasoline spill. The smell was worse in the early evening, between 5:00 p.m. and 6:00 p.m.

His family and he suffered headaches, irritation of the eyes and respiration, tiredness and a general upset feeling. His children could not play outside. The windows of the house had to remain shut at all times and everybody stayed indoors when the smell was worse. The children had trouble studying. He and his wife had problems concentrating. His wife worried about the long-term consequences that smell gasoline fumes could have. At times they had to leave their home and go to his mother's house to get away from the smell. He felt powerless because he felt he had to resolve the problem for his family but was unable to do so.

Mr. Moran did not produce any medical records nor did he testify as to any visits to any health facility for treatment for

exposure to gasoline fumes.  Nevertheless, the Court finds that he has proven by a preponderance of the evidence that he suffered $30,000 in damages caused by the fumes emanating from the gasoline spill.

### 12. Moraima Moran-Velez

Moraima Moran-Velez is the daughter of plaintiff Rafael Moran-Gonzalez.  She was 13 years old when she perceived the gasoline odors late 1993.  Her room was on the side of the house nearest the Rio Grande, from where the odors came.  She testified that they were so intense that she felt she had a gasoline container in her room.  The odors diminished in intensity in 1996. She developed headaches, throat and eye irritation and felt tired but had problems falling asleep.  The other members of her family had the same symptoms; they all slept together in an air conditioned room so that the smell would not be felt so intensely. At times the family went to her grandmother's house to escape the smell.

Although Moraima did not provide evidence of any visits to any health facility to be treated for her symptoms, the Court finds that she was proven by a preponderance of the evidence that she suffered $30,000 in damages caused by the fumes resulting from the gasoline spill.

### 13.  Carmelo Gonzalez-de Jesus

Carmelo Gonzalez-de Jesus is married to plaintiff Ginette Matos-Molina.  They rented the house at B-28 Cabrera Development in October, 1993.  In December, 1993 he began to smell the gasoline odor.  He described it as having a container or cloth wet with gasoline on his face.  The smell continued every day through 1995; it did not diminish in intensity until 1996.  He developed asthma, fatigue, irritation of the eyes, ears, throat and nose.  He used Visine for the irritation of his eyes, inhalers for his nose, Tylenol Cold and Tylenol Sinus, and anything that would relieve his symptoms and would allow him to be the productive member of his family, including medication prescribed to his children.  He did not visit health facilities other than his children's pediatrician. He repeated his wife's testimony concerning how the fumes affected their children.

He suffered not only because of his own conditions, but, as a father, because of the condition of his family.

Although Mr. Gonzalez did not visit any health facility to be treated for exposure to gasoline fumes, the Court finds that he has proven by a preponderance of the evidence that he suffered $30,000 in damages caused by the fumes produced by the gasoline spill.

**CONCLUSION**

Accordingly, the Court awards damages as follows:

| | | |
|---|---|---|
| 1. | Ivan Robles-Irizarry: | $30,000 |
| 2. | Alicia Rivera-Martinez: | $30,000 |
| 3. | William Morales-Martinez: | $30,000 |
| 4. | Daisy Rodriguez-Acevedo: | $30,000 |
| 5. | Iris Natal-Andujar: | $30,000 |
| 6. | Alberto Albaran-Natal: | $10,000 |
| 7. | Mariano Jose Albaran-Natal: | $20,000 |
| 8. | Andres Gonzalez-Baez: | $30,000 |
| 9. | Maribel Rodriguez-Maldonado: | $30,000 |
| 10. | Ginette Marie Matos-Molina: | $30,000 |
| 11. | Rafael Moran-Gonzalez: | $30,000 |
| 12. | Moraima Moran-Velez: | $30,000 |
| 13. | Carmelo Gonzalez-de Jesus: | $30,000 |

**TOTAL AMOUNT OF DAMAGES AWARDED:    $360,000**


**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 29, 2009.


                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE